IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00684-WJM-MJW

BRIAN DEMAESTRI,

    Plaintiff,

-v-

MACHOL & JOHANNES, LLC and
JACQUES A. MACHOL III, Esq. # 8382,

    Defendant's.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 2 7 2012

**GREGORY C. LANGHAM**
                    CLERK

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF LEGISLATIVE FACTS

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

To The Honorable Judge of this Court,

    Plaintiff Brian DeMaestri ("Plaintiff") hereby requests the Court take judicial notice of the following legislative facts and Federal District Court ruling attached as Exhibits A through C. This request is made pursuant to Rule 201 of the Federal Rules of Evidence and the authorities cited below. This request is made in connection with Plaintiff's Complaint and Jury Demand for damages for violations of the FCRA, FDCPA and invasion of privacy.

    Plaintiff respectfully requests that this Court take judicial notice of the following items:

    (1)    The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681a(r)(4) definition of the term "account" (Exhibit A).

    (2)    Title 15 U.S.C. §1693a(2) definition of the term "account" (Exhibit B) and,

DeMaestri v. Machol & Johannes, LLC
Plaintiff's Request for Judicial Notice of Legislative Facts

Page 1 of 5

Brian DeMaestri
9001 E. Evans Ave. 23D
Denver, CO 80247

MAR-27-2012  13:25                                    95%                                    P.02

(3) Applicable section of District Court ruling in *Miller v. Trans Union, L.L.C.*, (Exhibit C).

## LEGAL AUTHORITIES IN SUPPORT OF THIS REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 authorizes this Court to take judicial notice of such legislation and Federal District Court rulings because they are "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. Rule Evid. 201(b); <u>Singh v. Ashcroft</u>, 393 F.3d 903, 905 (9th Cir. 2004). Further, the Rule mandates that judicial notice be taken where it is "requested by a party and supplied with the necessary information," *id.* at 201(d), and authorizes judicial notice "at any stage of the proceeding," *id.* at 201(f). The facts for which the Plaintiff requests judicial notice may be judicially noticed because they are "not subject to reasonable dispute," as they are part of the FCRA, §15 U.S.C. 1681 *et seq.*, a legislative act freely accessible to the public and enacted by Congress. These facts are easily verifiable, as they are taken from a District Court ruling available to the public at the Public Access to Court Electronic Records (PACER) website @ www.pacer.gov, and the FCRA, §15 U.S.C. et seq., a legislative act enacted by Congress and is widely available to the public. A copy of the applicable sections of the statutes taken from the Official Compilation of U.S. Codes found in the U.S. Government Printing Office website @ www.gpo.gov, and District Court ruling from PACER are attached hereto as Exhibit A through C. District Court rulings and federal statutes such as the FCRA, §15 U.S.C. et seq., are "not subject to reasonable dispute [and] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

DeMaestri v. Machol & Johannes, LLC                                    Brian DeMaestri
Plaintiff's Request for Judicial Notice of Legislative Facts           9901 E. Evans Ave. 23D
                                                                       Denver, CO 80247
Page 2 of 5

MAR-27-2012  13:25                                            95%                  P.03

## JUDICAL NOTICE OF LEGISLATIVE FACTS

Rule 201(a) limits the scope of Rule 201 to judicial notice of adjudicative, not legislative, facts. See Fed. R. Evid. 201(a) advisory committee notes. Here, the facts of which the Plaintiff has requested the Court to take judicial notice, are legislative facts, specifically the FCRA, §15 U.S.C. 1681 et seq. "statutes are considered legislative facts" of which the authority of courts to take judicial notice is "unquestionable."). See, e.g., United States v. Williams, 442 F.3d 1259, 1261 (10th Cir. 2006) (citations omitted).

The District Court properly may take judicial notice of legislative facts, and such legislative facts include the interpretation of statutes. Fed. R. Evid. 201(a) advisory comm. notes. Moreover, the requirements of Rule 201(b) state that a "judicially noticed fact must be one that is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As it is undisputed that, on their face, federal statutes, specifically the FCRA, §15 U.S.C. et seq., and cannot reasonably be questioned.

## COURTS MAY TAKE JUDICAL NOTICE OF PRECEEDINGS IN OTHER COURTS

Courts may take judicial notice of proceedings in other courts. See, *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169 (10th Cir. 1979)) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

In *Miller v. Trans Union, L.L.C.*, the court affirmed the fact that in 2003, Congress adopted the Fair and Accurate Credit Transactions Act ("FACTA") which amended the FCRA to add more consumer protections and defined the term "credit" *inter*

DeMaestri v. Machol & Johannes, LLC
Plaintiff's Request for Judicial Notice of Legislative Facts

Page 3 of 5

Brian DeMaestri
9901 E. Evans Ave. 23D
Denver, CO 80247

MAR-27-2012 13:25 95% P.04

*alia*, under 15 U.S.C. §1681a(r). The ruling from *Miller* took into consideration the post FACTA definition of the term "credit" under 15 U.S.C. §1681a(r)(5). Plaintiff's request for this Court to take judicial notice is identical and from the same exact section of the FCRA in which the definition of "credit" is found. In fact, the terms "credit" and "account" are listed next to each other one after the other in the FCRA. The only distinction in Plaintiff's request is the actual term itself, wherein *Miller* the term was "credit" and here the term is "account". Accordingly, as the term "account" is found in the exact section of the statute in which the term "credit" is found and already acknowledged by the Court in its decisions in *Miller*, Plaintiff respectfully requests this court take judicial notice of 15 U.S.C. §1681a(r)(4) and 15 U.S.C. §1693a(2).

Exhibits C is an applicable portion of a case from another Federal District Court. The contents of this case are public records that are "not subject to reasonable dispute [and] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). This Exhibit reflects the proceedings in other federal courts, and are appropriate for judicial notice as set forth in *U.S. ex rel Robinson Rancheria Citizens Council*. Plaintiff requests that this Court take judicial notice of Exhibits A through C solely to demonstrate their existence and the similarity of the claims in that case, and not for the truth of their contents.

For the foregoing reasons, the aforementioned Exhibits may properly be considered by the Court and Plaintiff respectfully requests this honorable Court take judicial notice of Exhibits A through C.

DeMaestri v Machol & Johannes, LLC
Plaintiff's Request for Judicial Notice of Legislative Facts

Page 4 of 5

Brian DeMaestri
9901 E. Evans Ave. 23D
Denver, CO 80247

MAR-27-2012  13:25                                      95%                              P.05

Dated: March 27, 2012
Respectfully submitted,

_____
Brian DeMaestri
9901 E. Evans Ave. #23D
Denver, CO 80247

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the document above was mailed USPS first class mail and by electronic mail to the person(s) listed below:

MACHOL & JOHANNES, LLC and
JACQUES A. MACHOL III, Esq.
717 17th St # 2300
Denver, CO 80202

and;

jacques.macholiii@mjfirm.com

_____
Plaintiff's Original Signature

DeMaestri v. Machol & Johannes, LLC
Plaintiff's Request for Judicial Notice of Legislative Facts

Page 5 of 5

Brian DeMaestri
9901 E. Evans Ave. 23D
Denver, CO 80247

MAR-27-2012 13:25                    95%                    P.06

(p) CONSUMER REPORTING AGENCY THAT COMPILES AND MAINTAINS FILES ON CONSUMERS ON A NATIONWIDE BASIS.—The term "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" means a consumer reporting agency that regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

(1) Public record information.

(2) Credit account information from persons who furnish that information regularly and in the ordinary course of business.

(q) DEFINITIONS RELATING TO FRAUD ALERTS.

(1) ACTIVE DUTY MILITARY CONSUMER.—The term "active duty military consumer" means a consumer in military service who—

(A) is on active duty (as defined in section 101(d)(1) of title 10) or is a reservist performing duty under a call or order to active duty under a provision of law referred to in section 101(a)(13) of title 10; and

(B) is assigned to service away from the usual duty station of the consumer.

(2) FRAUD ALERT; ACTIVE DUTY ALERT.—The terms "fraud alert" and "active duty alert" mean a statement in the file of a consumer that—

(A) notifies all prospective users of a consumer report relating to the consumer that the consumer may be a victim of fraud, including identity theft, or is an active duty military consumer, as applicable; and

(B) is presented in a manner that facilitates a clear and conspicuous view of the statement described in subparagraph (A) by any person requesting such consumer report.

(3) IDENTITY THEFT.—The term "identity theft" means a fraud committed using the identifying information of another person, subject to such further definition as the Commission may prescribe, by regulation.

(4) IDENTITY THEFT REPORT.—The term "identity theft report" has the meaning given that term by rule of the Commission, and means, at a minimum, a report—

(A) that alleges an identity theft;

(B) that is a copy of an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency, including the United States Postal Inspection Service, or such other government agency deemed appropriate by the Commission; and

(C) the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information if, in fact, the information in the report is false.

(5) NEW CREDIT PLAN.—The term "new credit plan" means a new account under an open end credit plan (as defined in section 1602(i) of this title) or a new credit transaction not under an open end credit plan.

(r) CREDIT AND DEBIT RELATED TERMS

(1) CARD ISSUER.—The term "card issuer" means—

(A) a credit card issuer, in the case of a credit card; and

(B) a debit card issuer, in the case of a debit card.

(2) CREDIT CARD. The term "credit card" has the same meaning as in section 1602 of this title.

(3) DEBIT CARD. The term "debit card" means any card issued by a financial institution to a consumer for use in initiating an electronic fund transfer from the account of the consumer at such financial institution, for the purpose of transferring money between accounts or obtaining money, property, labor, or services.

(4) ACCOUNT AND ELECTRONIC FUND TRANSFER.—The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title. (Exhibit A)

(5) CREDIT AND CREDITOR. The terms "credit" and "creditor" have the same meanings as in section 1691a of this title.

(s) FEDERAL BANKING AGENCY. The term "Federal banking agency" has the same meaning as in section 1813 of title 12.

(t) FINANCIAL INSTITUTION.—The term "financial institution" means a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person that, directly or indirectly, holds a transaction account (as defined in section 461(b) of title 12) belonging to a consumer.

(u) RESELLER. The term "reseller" means a consumer reporting agency that—

(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and

(2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

(v) COMMISSION. The term "Commission" means the Federal Trade Commission.

(w) NATIONWIDE SPECIALTY CONSUMER REPORTING AGENCY. The term "nationwide specialty consumer reporting agency" means a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis relating to—

(1) medical records or payments;

(2) residential or tenant history;

(3) check writing history;

(4) employment history; or

(5) insurance claims.

(x) EXCLUSION OF CERTAIN COMMUNICATIONS FOR EMPLOYEE INVESTIGATIONS.—

(1) COMMUNICATIONS DESCRIBED IN THIS SUBSECTION.—A communication is described in this subsection if—

(A) but for subsection (d)(2)(D) of this section, the communication would be a consumer report;

(B) the communication is made to an employer in connection with an investigation of

**(b) Purposes**

It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

(Pub. L. 90–321, title IX, §902, as added Pub. L. 95–630, title XX, §2001, Nov. 10, 1978, 92 Stat. 3728; amended Pub. L. 111–203, title X, §1073(a)(1), July 21, 2010, 124 Stat. 2060.)

AMENDMENTS

2010—Subsec. (b) Pub. L. 111–203 inserted "and remittance" after "electronic fund".

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

EFFECTIVE DATE

Pub. L. 90–321, title IX, §923, formerly §921, as added by Pub. L. 95–630, title XX, §2001, Nov. 10, 1978, 92 Stat. 3741; renumbered §922, Pub. L. 111–24, title IV, §401(1), May 22, 2009, 123 Stat. 1751; renumbered §923, Pub. L. 111–203, title X, §1073(a)(2), July 21, 2010, 124 Stat. 2060, provided that: "This title [enacting this subchapter] takes effect upon the expiration of eighteen months from the date of its enactment [Nov. 10, 1978], except that sections 909 and 911 [sections 1693g, 1693i of this title] take effect upon the expiration of ninety days after the date of enactment."

[Pub. L. 111–203, §1073(a)(3), which directed renumbering of section 922 of Pub. L. 90–321 as section 923 effective 1 day after July 21, 2010, was executed after the renumbering of section 921 of Pub. L. 90–321 as section 922 by Pub. L. 111–24, §401(1), effective 15 months after May 22, 2009, to reflect the probable intent of Congress.]

SHORT TITLE

This subchapter known as the "Electronic Fund Transfer Act", see Short Title note set out under section 1601 of this title.

**§ 1693a. Definitions**

As used in this subchapter—

(1) the term "accepted card or other means of access" means a card, code, or other means of access to a consumer's account for the purpose of initiating electronic fund transfers when the person to whom such card or other means of access was issued has requested and received or has signed or has used, or authorized another to use, such card or other means of access for the purpose of transferring money between accounts or obtaining money, property, labor, or services;

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

(3) the term "Board" means the Board of Governors of the Federal Reserve System;

(4) the term "business day" means any day on which the offices of the consumer's financial institution involved in an electronic fund transfer are open to the public for carrying on substantially all of its business functions;

(5) the term "consumer" means a natural person;

(6) the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. Such term does not include—

(A) any check guarantee or authorization service which does not directly result in a debit or credit to a consumer's account;[1]

(B) any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designed primarily to transfer funds on behalf of a consumer;

(C) any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

(D) any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

(E) any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated;

as determined under regulations of the Board;

(7) the term "electronic terminal" means an electronic device, other than a telephone operated by a consumer, through which a consumer may initiate an electronic fund transfer. Such term includes, but is not limited to, point-of-sale terminals, automated teller machines, and cash dispensing machines;

(8) the term "financial institution" means a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer;

(9) the term "preauthorized electronic fund transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals;

(10) the term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of

---

[1] So in original. The colon probably should be a semicolon.

(Exhibit B)

-12-

consumer's privacy interests, for it will 'involve' the plaintiff directly.") (citing Cole, 389 F.3d at 725).

### Prior Interpretations of "Credit Transaction" Were Superseded by 2003 Statutory Amendments

Supportkids's claim that it had a permissible purpose is based on two sources of authority the FTC's non-binding "FCRA Commentary" and non-binding case law from other jurisdictions. (Def. Mem. S.J. at 4-7.) The FTC's "FCRA Commentary" reiterates the agency's "judgment creditor theory," which states that a person attempting to collect a judgment has a permissible purpose to access a consumer report. 16 C.F.R. pt. 600, App. (1993). When the FTC developed its theory, the FCRA did not define the terms "credit" or "creditor." In the absence of a statutory definition of "credit" or "credit transaction," the theory was not patently unreasonable; to the contrary, a number of courts explicitly adopted the FTC's non-binding position. See, e.g., Baker v. Bronx-Westchester Investigations, Inc., 850 F. Supp. 260, 264 (S.D.N.Y. 1994); Hasbun v. County of Los Angeles, 323 F.3d 801 (9th Cir. 2003). But the FTC's "FCRA Commentary" and the judicial opinions endorsing the FTC's position are no longer persuasive because they do not take into account the December 2003 amendments to FCRA. The statutory definition of "credit" demands that a "creditor" grant rights to a "debtor" to defer payment of a "debt" or to incur debts and to defer payment of those debts. 15 U.S.C. § 1691a(d). Even if a child-support obligation is a debt for the purposes of the statute,

(Exhibit C)
1 of 2

(Exhibit C)
2 of 2

13

itself a debatable premise, see Mabe v. G.C. Servs. Ltd. P'ship, 32 F.3d 86, 88 (4th Cir. 1994), a typical child-support arrangement does not involve one party granting rights to another to defer payment. Id. Furthermore, in order to have a "credit transaction," the person extending credit must satisfy the statutory definition of "creditor." The FTC/Baker view that all court-ordered child support obligations qualify as "credit transactions" is not persuasive in light of the statutory requirement that a creditor "regularly extend" credit. See 15 U.S.C. § 1681a(r) (adopting definition of "credit" and "creditor" as defined by 15 U.S.C. § 1691a(d)-(e)). We do not see how a party to a child-support order could satisfy that definition, and certainly there is no evidence that Alisa Sidbury satisfied it in this case.

Supportkids has not offered evidence that the alleged child support plaintiff owed to Alisa Sidbury was a "credit transaction" or that Sidbury was a "creditor" within the meaning of § 1681b(a). Supportkids has therefore not shown a "permissible purpose," and its cross-motion for summary judgment will be denied.

### Plaintiff's Motion for "Partial Summary Judgment"

Plaintiff is not entitled to "partial summary judgment" on the issue of whether Supportkids had a permissible purpose. Rule 56(a) does not authorize summary judgment on part of a claim. Arado v. General Fire Extinguisher Corp., 626 F. Supp. 506, 509 (N.D. Ill.

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO
### FACSIMILE COVER SHEET

1. Date of Transmission:

    3/27/12

2. Name of party making the transmission:

    BRIAN DEMAESTRI,

    Facsimile number: 720-535-6656 (call first)   Telephone number: 720-535-6656

3. Case number, caption and title of pleading or paper:

    1:12-cv-00684-WMJ-MJW,

    BRIAN DEMAESTRI v. MACHOL & JOHANNES LLC. ET AL.,

    REQUEST FOR JUDICAL NOTICE OF LEGISLATIVE FACTS.

4. Number of pages being transmitted, including facsimile cover sheet: 10

    Instructions: